UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

GERALD PREBE,

    Petitioner,

v.                                                             Case No. 8:17-cv-2375-T-36AAS

SECRETARY, DEPARTMENT
OF CORRECTIONS.

    Respondent.
_____/

**ORDER**

    Gerald Prebe petitions for the writ of habeas corpus under 28 U.S.C. § 2254 and challenges his conviction for attempted second degree murder. (Doc. 1) Respondent argues that Ground One of the petition is meritless and Ground Two is procedurally barred. (Doc. 8 at 8, 17) In his reply, Prebe agrees that Ground Two is procedurally barred but argues that he is still entitled to relief under Ground One. (Doc. 18) Upon review of the petition, the response and exhibits in support of the response, and the reply, the petition will be denied.

**I. PROCEDURAL HISTORY**

    Prebe pled guilty to attempted second degree murder and leaving the scene of an accident with injury. (Doc. 10, Ex. 1 at 301–02, 348–55) The victim was an employee of the City of Clearwater and was working on the side of the road.[1] Prebe was driving down the street, swerved his car, and struck the victim. As Prebe struck the victim, Prebe yelled a racial epithet. Prebe left the victim lying in the middle of the road and drove to his sister's house. The victim suffered permanent injuries. Prebe and the victim did not know each other. After waiving his

---

[1] The facts derive from the stipulated factual basis for the plea. (Doc. 10, Ex. 1 at 338–40, 354)

constitutional rights, Prebe told police that he wanted to kill the victim because he was a terrorist. Two defense experts evaluated Prebe and concluded that Prebe was legally insane at the time of the crime. A prosecution expert also evaluated Prebe and disagreed.

In exchange for the plea, the prosecutor waived the 35-year statutory maximum sentence and agreed that the aggregate sentence for the two convictions could not exceed 20 years. (Doc. 10, Ex. 1 at 301, 348, 354) At sentencing, Prebe moved for a downward departure under Fla. Stat. § 921.0026 based in part on the need for specialized treatment for a mental disorder. (Doc. 10, Ex. 1 at 452–58) The trial court sentenced Prebe to 18 years for the attempted murder conviction and a concurrent 5 years for the leaving the scene of an accident conviction. (*Id.* at 306–10, 459–71) The state appellate court affirmed the convictions and sentences in an unelaborated decision. (Doc. 10, Ex. 4)

Prebe filed a motion for post-conviction relief under Rule 3.850, Florida Rules of Criminal Procedure. (Doc. 10, Ex. 5 at 24–42) The post-conviction court summarily denied the motion (*Id.* at 43–182) and the state appellate court affirmed in an unelaborated decision. (Doc. 10, Ex. 5 at 183 and Ex. 7) Prebe then filed the federal petition in this case.

## II. EXHAUSTION AND PROCEDURAL DEFAULT

Respondent correctly argues that Ground Two is unexhausted and procedurally barred. (Doc. 8 at 8, 18) A petitioner must exhaust the remedies available in state court before a federal court can grant relief on federal habeas. 28 U.S.C. § 2254(b)(1)(A). The petitioner must (1) alert the state court to the federal nature of his claim and (2) give the state court one full opportunity to resolve the federal claim by invoking one complete round of the state's established appellate review process. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999); *Picard*

*v. Connor*, 404 U.S. 270, 278 (1971).  The state court must have the first opportunity to review and correct any alleged violation of a federal right.  *Baldwin v. Reese*, 541 U.S. 27, 29 (2004).

A federal court may stay — or dismiss without prejudice — a habeas case to allow a petitioner to return to state court to exhaust a claim.  *Rhines v. Weber*, 544 U.S. 269 (2005); *Rose v. Lundy*, 455 U.S. 509 (1982).  If the state court would deny the claim on state procedural grounds, the federal court instead denies the claim as procedurally barred.  *Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998) (citing *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991)).  A petitioner may excuse a procedural default on federal habeas review by (1) showing cause for the default and actual prejudice from the alleged violation of federal law or (2) demonstrating a miscarriage of justice.  *Maples v. Thomas*, 565 U.S. 266, 280 (2012); *House v. Bell*, 547 U.S. 518, 536–37 (2006).

**<u>Ground Two</u>**

Prebe asserts that trial counsel was ineffective for not filing a motion to suppress Prebe's confession to police.  (Doc. 1-2 at 3–4)  Prebe raised the claim in his motion for post-conviction relief (Doc. 10, Ex. 5 at 37–41) but did not raise the claim in his brief on appeal.  (Doc. 10, Ex. 6 at 9–12)  On appeal, Prebe conceded that the post-conviction court correctly denied the claim.  (*Id.* at 9)  Because Prebe abandoned the claim, the state court did not have a full opportunity to resolve the claim.  *Boerckel*, 526 U.S. at 845; *Prince v. State*, 40 So. 3d 11, 13 (Fla. 4th DCA 2010).  If Prebe returns to state court to exhaust the claim, the state court will dismiss the claim as untimely and successive and, consequently, the ground is procedurally barred.  Fla. R. Crim. P. 3.850(b), (h); *Snowden*, 135 F.3d at 736.  Prebe concedes that the ground is procedurally barred.  (Doc. 18 at 1–2)  Accordingly, Ground Two is denied.

### III.  GOVERNING LEGAL PRINCIPLES

**A.     AEDPA**

Because Prebe filed his federal petition after the enactment of the Antiterrorism and Effective Death Penalty Act of 1996, AEDPA governs the review of his claims.  *Lindh v. Murphy*, 521 U.S. 320, 336–37 (1997).  AEDPA amended 28 U.S.C. § 2254(d) and created a highly deferential standard for federal court review of a state court adjudication by requiring:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim —
>
> (1)     resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2)     resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Williams v. Taylor*, 529 U.S. 362, 412–13 (2000) interprets this constraint on the power of the federal habeas court to grant a state prisoner's petition:

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts. Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

Clearly established federal law refers to the holdings of the U.S. Supreme Court's opinions at the time of the relevant state court decision.  *Williams*, 529 U.S. at 412.

4

"[A]n unreasonable application of federal law is different from an *incorrect* or *erroneous* application of federal law." *Williams*, 529 U.S. at 412 (italics in original). Even clear error is not enough. *Virginia v. LeBlanc*, 137 S. Ct. 1726, 1728 (2017). A federal petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility of fairminded disagreement." *Harrington v. Richter*, 562 U.S. 86, 103 (2011). "This is 'meant to be' a difficult standard to meet." *LeBlanc*, 137 S. Ct. at 1728 (quoting *Richter*, 562 U.S. at 102).

A factual determination by the state court is not unreasonable "merely because the federal habeas court would have reached a different conclusion in the first instance." *Wood v. Allen*, 558 U.S. 290, 301 (2010). A federal habeas court may grant relief only if "in light of the evidence presented in the state court proceedings, no reasonable jurist would agree with the factual determinations upon which the state court decision is based." *Raleigh v. Sec'y, Fla. Dep't Corrs.*, 827 F.3d 938, 948–49 (11th Cir. 2016). Also, a state court's factual determinations are presumed correct, and a petitioner has the burden of rebutting that presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

"[AEDPA] modified a federal habeas court's role in reviewing state prisoner applications in order to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 694 (2002). Consequently, "review under [Section] 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Cullen v. Pinholster*, 563 U.S. 170, 181–82 (2011). *Accord Landers v. Warden, Att'y Gen. of Ala.*, 776 F.3d 1288, 1294–95 (11th Cir. 2015) (applying *Pinholster* to Section 2254(d)(2)).

If the last state court to decide a federal claim explains its decision in a reasoned opinion, a federal habeas court reviews the specific reasons in the opinion and defers to those reasons if reasonable. *Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018). If the last state court decision is without reasons, the federal court "should 'look through' the unexplained decision to the last related state-court decision that does provide a relevant rationale [and] presume that the unexplained decision adopted the same reasoning." *Id.* at 1192.

**B.     Ineffective Assistance of Counsel**

Prebe asserts ineffective assistance of counsel — a difficult claim to sustain. *Strickland v. Washington*, 466 U.S. 668, 687 (1984) explains:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.

"There is no reason for a court deciding an ineffective assistance of counsel claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one." *Strickland*, 466 U.S. at 697.

"[C]ounsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Strickland*, 466 U.S. at 690. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Id.* "An error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Strickland*, 466 U.S. at 691. To demonstrate prejudice after a guilty plea, the

6

defendant must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Lee v. United States*, 137 S. Ct. 1958, 1965 (2017).

*Strickland* cautions that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." *Strickland*, 466 U.S. at 690–91. *Accord Jones v. Barnes*, 463 U.S. 745, 751 (1983) (explaining that counsel does not have a duty to raise a frivolous claim). Because the standards under *Strickland* and AEDPA are both highly deferential, "when the two apply in tandem, review is 'doubly' so." *Richter*, 562 U.S. at 105. "Given the double deference due, it is a 'rare case in which an ineffective assistance of counsel claim that was denied on the merits in state court is found to merit relief in a federal habeas proceeding.'" *Nance v. Warden, Ga. Diag. Prison*, 922 F.3d 1298, 1303 (11th Cir. 2019) (quoting *Johnson v. Sec'y, Dep't Corrs.*, 643 F.3d 907, 911 (11th Cir. 2011)).

### III. ANALYSIS

The state court's rejection of Ground One on the merits is owed deference under Section 2254(d). The post-conviction court recognized that *Strickland* governs the claim of ineffective assistance of counsel. (Doc. 10, Ex. 5 at 43–44) Because the state court denied the ground based on *Strickland*, Prebe cannot meet the "contrary to" test in Section 2254(d). Prebe instead must show that the state court unreasonably applied *Strickland* or unreasonably determined a fact.

### **Ground One**

Prebe asserts that trial counsel was ineffective for advising him to abandon the insanity defense. (Doc. 1-2 at 1–2) Prebe contends that the defense was supported by expert and lay testimony and, if trial counsel had competently advised him, he would not have pled guilty and

7

would have insisted on going to trial.  (Doc. 1-2 at 2)  The post-conviction court denied the

ground as follows (Doc. 10, Ex. 5 at 44–45) (state court record citations omitted):

> The Defendant argues that counsel was ineffective for advising him to enter into a plea agreement. The Defendant claims that by entering a plea agreement, he waived his right to assert an insanity defense at trial. The Defendant contends that two doctors found the Defendant insane at the time of the offenses[.] [T]herefore, counsel's advice to enter a plea was deficient. The Defendant maintains that without counsel's misadvice, he would not have entered a plea and would have proceeded to trial.
>
> The Defendant's claim must be denied because he fails to establish that without counsel's deficiencies, there is a reasonable probability that he would have insisted on proceeding to trial. The record reflects that counsel thoroughly investigated the Defendant's mental health and planned to present an insanity defense at trial. A week before trial, the Court held a hearing and discussed the Defendant's position. During the hearing, counsel again indicated that he was ready to present an insanity defense at trial, noting that he had two doctors that would testify as to the Defendant's insanity. The State indicated that it would be presenting testimony from Dr. Gamache that the Defendant was not insane and was suffering from substance withdrawal. The parties held an extensive discussion of the advantages and risks of going to trial regarding the Defendant's defense of insanity.
>
> Following this discussion, the Defendant stated that he wished to plead guilty, that he was satisfied with counsel's representation[,] and that he understood the maximum sentence he could have received. Further, the Defendant testified that he understood that he was giving up his right to present an insanity defense by entering the plea. As a result of the plea agreement in this case, the Defendant's sentence was capped at 20 years' imprisonment, which the State was reluctant to accept due to the victim's injuries and desire to proceed to trial. Following testimony from three different doctors, the Court sentenced the Defendant to 18 years' imprisonment. He was facing a maximum possible sentence of 35 years' imprisonment and decided to tender a plea to the Court to resolve his case.
>
> While the Defendant appears to argue that his insanity defense was likely to succeed at trial, the Court does not find that it was likely to succeed. The record reflects that the Defendant went "cold turkey" on alcohol and had used marijuana shortly before the

>incident. Dr. Gamache would have testified that the Defendant was not insane at the time of the offenses and that his actions were in conformity with his abrupt withdrawal of alcohol. Specifically, Dr. Gamache would have testified that the Defendant made inconsistent statements with his substance use, that he recalled with particularity the moments before and after the incident but "blacked out" during it, that he could not identify why he believed the victim to be a terrorist, and that he stated he did not know right from wrong which is unusual for a defendant to say because it is one of the statutory criteria for insanity. When considering the totality of the circumstances surrounding his plea, there is no reasonable probability that the Defendant would not have entered his plea, instead insisting on proceeding to trial, but for counsel's alleged "misadvice." *See Grosvenor*, 874 So. 2d at 1181–82. For the aforementioned reasons, this claim is denied.

A notice of intent to rely on the insanity defense confirms that trial counsel intended to present the defense. (Doc. 10, Ex. 5 at 53–57)  At the change of plea hearing, the parties discussed evidence in support of both the crime and the defense. (Doc. 10, Ex. 5 at 67–79)  Trial counsel was prepared to present testimony by two doctors who opined that Prebe was legally insane at the time of the crimes. (*Id.* at 67–68)  After that discussion, Prebe pled guilty and specifically waived his right to present the insanity defense. (*Id.* at 82–83)  In exchange for the plea, the prosecutor waived the statutory maximum 35-year sentence and agreed that the aggregate sentence could not exceed 20 years. (Doc. 10, Ex. 5 at 79–80, 86)  After a thorough colloquy, the trial court accepted the plea. (*Id.* at 79–87)  The trial court found that Prebe was alert and intelligent, understood his rights and the consequences of the plea, and freely and voluntarily entered the plea. (Doc. 10, Ex. 5 at 87)[2]

Prebe's statements in open court under oath at the change of plea hearing are presumed truthful on federal habeas review. *Blackledge v. Allison*, 431 U.S. 63, 73–74 (1977) ("For the

---

[2] Also, Prebe signed a change of plea form. (Doc. 10, Ex. 1 at 301–02)  The form listed all rights that Prebe waived by pleading guilty including "the right to employ any defenses which [he] may have [had]." (Doc. 10, Ex. 1 at 301)

representations of the defendant, his lawyer, and the prosecutor at [a change of plea hearing], as well as any findings made by the judge accepting the plea, constitute a formidable barrier in any subsequent collateral proceedings. Solemn declarations in open court carry a strong presumption of verity."); *Thompson v. Wainwright*, 787 F.2d 1447, 1460–61 (11th Cir. 1986) ("We see little difference between the presumption of correctness under [S]ection 2254 and the 'strong presumption of verity' identified by the Supreme Court in *Blackledge*.").

Also, the prosecution's expert opined that Prebe was not legally insane at the time of the crimes. (Doc. 10, Ex. 5 at 92) The expert concluded that "the most logical and plausible explanation for [Prebe's] altered mental state on the date of the offense was his abuse of drugs and alcohol and his sudden acute withdrawal from those substances and the psychological effects of that." (*Id.*) Prebe told the expert that, a week before the crimes, he had stopped drinking alcohol "cold turkey" and smoked marijuana which made him very paranoid. (Doc. 10, Ex. 5 at 92–95) At first, Prebe denied using drugs but then admitted that he had used marijuana. (*Id.* at 94) Prebe remembered seeing the victim cross the street and striking him. (*Id.* at 96) Prebe did not know why he ran the victim over and described his mind as "gone." (Doc. 10, Ex. 5 at 96) Prebe reported "black[ing] out" and believed that he did not know right from wrong but also described the crimes as an accident. (*Id.* at 96–97) Prebe remembered going to his sister's home, yelling at someone nearby, and telling his sister that he hit someone with his car. (*Id.* at 98–99) Prebe never thought that the victim may have been a terrorist until the police "put that into his head." (Doc. 10, Ex. 5 at 99–100)

At the change of plea hearing, the trial court advised Prebe that he faced 35 years if he went to trial. (Doc. 10, Ex. 5 at 80, 86) In exchange for his plea, the State agreed to reduce the

10

maximum to 20 years. (Doc. 10, Ex. 5 at 80, 86) Prebe, who was 38 years old (Doc. 10, Ex. 5 at 81), accepted the plea to avoid the risk of three and a half decades in prison.

Because testimony by the prosecution's expert and the circumstances surrounding the crimes would have rebutted testimony by the defense experts on the insanity defense, Prebe would not have insisted on going to trial. Fla. Stat. § 775.027(2) ("The defendant has the burden of proving the defense of insanity by clear and convincing evidence."); *Gryczan v. State*, 726 So. 2d 345, 346 (Fla. 4th DCA 1999) ("It is well settled that sanity is a question for the trier of fact to be determined from all of the evidence, and that expert testimony is not conclusive on the issue of sanity."). The state court did not unreasonably apply *Strickland* by concluding that Prebe failed to demonstrate prejudice. *Lee*, 137 S. Ct. at 1965; *Strickland*, 466 U.S. at 697.

Prebe argues that the state court unreasonably determined facts when assessing the strength of the insanity defense. (Doc. 18 at 6–9) Prebe contends that the prosecution's expert admitted that Prebe probably had a psychotic break at the time of the offenses, conceded that the psychotic break was from a mental disease, and mistakenly relied on Prebe's use of cocaine for this opinion. (Doc. 18 at 6–7) The prosecution's expert opined that Prebe may have had a psychotic break as a result of either acute withdrawal from alcohol and marijuana or acute withdrawal from alcohol and marijuana exacerbated by the use of cocaine. (Doc. 10, Ex. 1 at 412–13, 421–22) The expert disagreed that psychosis or bipolar disorder caused the psychotic break. (*Id.* at 415–17) The expert conceded that Prebe clinically suffered from an "acute mental condition" but disagreed that he was legally insane under state law.[3] (Doc. 10, Ex. 1 at 417–18, 420) The expert acknowledged that Prebe denied using cocaine and a toxicology report did not

---

[3] The state court concluded that the testimony by the prosecution's expert did not support the insanity defense under state law, and a state court's determination of state law is owed deference in federal court. *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005).

11

detect cocaine. (*Id.* at 421–22) Nevertheless, the expert concluded that Prebe's behavior was "best accounted for by his withdrawal from alcohol, most likely exacerbated by the use of other drugs." (Doc. 10, Ex. 1 at 422)

Prebe contends that the prosecution's expert did not explain why medical staff at the jail prescribed Prebe anti-psychotic medication and Prebe took that medication for three years. (Doc. 18 at 7–8) The expert acknowledged that records showed that Prebe was prescribed a psychotropic medication in 2012. (Doc. 10, Ex. 1 at 419) The expert further agreed that he had heard the defense's expert testify that Prebe continued to take that medication and still showed psychological symptoms. (*Id.* at 420) The expert had not reviewed Prebe's medical records since 2012. (Doc. 10, Ex. 1 at 427) The expert was "puzzled" that, if Prebe suffered from mental disorder, why the medication had not put his symptoms into remission. (*Id.*)

Prebe further contends that two defense experts opined that Prebe was legally insane at the time of the offense. (Doc. 18 at 6, 8) At the plea, the parties stipulated that one of the defense experts did not give any reason for her opinion. (Doc. 10, Ex. 5 at 72) Prebe never presented that expert's opinion to the post-conviction court (Doc. 10, Ex. 5 at 24–32), and review on federal habeas is limited to the record that was before the state court. *Pinholster*, 563 U.S. at 181–82. The second expert opined that Prebe had bipolar disorder with psychotic features, actively had psychotic features on the day of the crimes, and was legally insane. (Doc. 10, Ex. 5 at 379–80) As explained earlier, because both the opinion by the prosecution's expert and the circumstances surrounding the crimes rebutted the opinion by the defense's expert, Prebe would not have insisted on going to trial.

12

Prebe finally contends that lay testimony would have supported his insanity defense. (Doc. 18 at 8) Several days before the crimes on Easter[4], a family member heard Prebe repeatedly talk about terrorists. (Doc. 18 at 8) A week before the crimes, a family member called 911 because Prebe took his wife and child into hiding believing that terrorists were coming after him. (Doc. 18 at 8) Just after the crimes, Prebe drove to his sister's house, parked his car on the lawn in the bushes, and ran into the street screaming. (Doc. 18 at 8) Prebe reported that, one week before the crimes, he stopped abusing alcohol "cold turkey" and smoked marijuana. (Doc. 10, Ex. 5 at 92, 94–95) The prosecution's expert concluded that Prebe's altered mental state resulted from his abuse and his withdrawal of drugs and alcohol. (Doc. 10, Ex. 5 at 92) The lay testimony about Prebe's bizarre conduct that occurred a week before the crimes would have been consistent with this opinion.

Prebe next asserts that the state court unreasonably applied *Hill v. Lockhart*, 474 U.S. 52 (1985). (Doc. 18 at 13–15) Prebe contends that the state court did not cite *Hill*. (*Id.* at 13) The state court cited *Grosvenor v. State*, 874 So. 2d 1176, 1179 (Fla. 2004) which applies the test in *Hill*. (Doc. 10, Ex. 5 at 43–44) *Accord Early v. Packer*, 537 U.S. 3, 8 (2002) ("Avoiding these pitfalls [under Section 2254(d)(1)] does not require citation of our cases — indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").

Prebe further contends that the state court did not analyze trial counsel's strategic decision to advise Prebe to plead guilty. (Doc. 18 at 2–6, 13–15) Prebe argues that the state court failed to hold an evidentiary hearing to determine why trial counsel made that decision. (Doc. 18 at 13–14) Because the state court denied the claim based on *Strickland*'s prejudice

---

[4] The crimes occurred on April 28, 2011 (Doc. 10, Ex. 1 at 6) and Easter occurred on April 24, 2011. Fed. R. Evid. 201(b).

13

component, the state court did not analyze trial counsel's performance. (Doc. 10, Ex. 5 at 44–45) *Strickland* does not require analysis of both components. *Strickland*, 466 U.S. at 697.

Lastly, Prebe asserts that trial counsel was ineffective for advising Prebe to accept the plea. (Doc. 18 at 2–6) Prebe contends that the trial judge doubted that the prosecution could prove a hate crime enhancement under Section 775.085(1)(a), Florida Statutes, for the attempted murder, and he faced 20 years if he was convicted at trial without the enhancement. (Doc. 18 at 2–6) Prebe argues that the prosecutor's agreement to reduce the maximum sentence to 20 years was an "illusory" benefit and trial counsel was ineffective for advising Prebe to plead. (Doc. 18 at 4–6)

Prebe did not raise this claim in either his post-conviction motion (Doc. 10, Ex. 5 at 35–37) or his brief on appeal (Doc. 10, Ex. 6 at 9–12) and, consequently, the claim is procedurally barred. *Boerckel*, 526 U.S. at 845. Prebe raised the claim for the first time on federal habeas in his reply, and the claim is also waived. *Oliveiri v. United States*, 717 F. App'x 966, 967 (11th Cir. 2018). Even so, the trial judge doubted that the prosecution could prove the hate crime enhancement based on Prebe's statements to police that he wanted to kill the victim because he was a terrorist. (Doc. 10, Ex. 1 at 344–45) In deposition, the victim testified that, just before Prebe ran him over, Prebe said, "F*ck you, ni*ger." (Doc. 10, Ex. 1 at 131) The victim was African American. (Doc. 10, Ex. 5 at 344–45) The jury — not the trial judge — would have decided whether Prebe committed the crimes with prejudice based on race. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). Notwithstanding the trial judge's comments, Prebe faced 35 years if the jury convicted him as charged at trial, and Prebe pled guilty in exchange for a reduction in that maximum sentence to 20 years. Ground One is denied.

Because Prebe does not demonstrate the need for an evidentiary hearing and the state court record refutes the grounds in his federal petition, he is not entitled to a hearing. *Schriro v. Landrigan*, 550 U.S. 465, 474 (2007); *Jones v. Sec'y, Fla. Dep't Corrs.*, 834 F.3d 1299, 1318–19 (11th Cir. 2016).

Any claims not specifically addressed in this order have been reviewed and are without merit.

It is therefore **ORDERED AND ADJUDGED:**

1. The petition for the writ of habeas corpus (Doc. 1) is **DENIED**.

2. The Clerk is directed to enter judgment against Prebe and close this case.

3. Prebe does not make a substantial showing of the denial of a constitutional right and does not demonstrate that reasonable jurists would find debatable both the merits of the underlying claims and the procedural issues. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 478 (2000). Consequently, a certificate of appealability is **DENIED**. Leave to appeal *in forma pauperis* is also **DENIED**.

**DONE AND ORDERED** in Tampa, Florida, this 6th day of November, 2020

Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

All parties of record

15